UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X          15-CV-6084 (ARR)(LB)
                                                        :
SHULAMIT MIZRAHI,                                       :
                                                        :
                             Plaintiff,                 :
                                                        :                **AMENDED COMPLAINT**
                                                        :
                 v.                                     :
                                                        :
THE CITY OF NEW YORK, POLICE                            :
OFFICER JUN CHEN, POLICE                                :
OFFICER JOSEPH CORRADO, THE                             :
NEW YORK AND PRESBYTERIAN                               :
HOSPITAL (a/k/a NEW YORK                                :
PRESBYTERIAN HOSPITAL),                                 :
NOVELEEN NELSON, and SATISH                             :
ABEELUCK,                                               :
                                                        :
                             Defendants.                :
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Plaintiff, Shulamit Mizrahi, by her undersigned attorney, hereby alleges as

and for her Amended Complaint the following:

## INTRODUCTION

        1.  On August 10, 2015 at about 9:40 pm in the evening, the defendants

unlawfully entered the home of Plaintiff, Shulamit Mizrahi ("**Mizrahi**"), based on

an unreliable telephone call to a 911 operator by an unidentified "friend" who

claimed that Mizrahi was going to hurt herself.  Ignoring all evidence to the

contrary and despite Mizrahi's repeated assurances to the EMT and NYPD

personnel who barged into her home that she was not a danger to herself, the EMT

and NYPD defendants took custody of Mizrahi as an "emotionally disturbed person" and escorted her to Maimonides Medical Center where she was medically and psychiatrically evaluated against her will.  Later that same evening at about 12:35 am on the 11th of August, Mizrahi was released from the hospital because she was not a danger to herself.

2.  Mizrahi brings this action against the defendants to vindicate her civil rights and to recover compensatory and punitive damages against the defendants for the loss of her liberty, the warrantless invasion of her home and the emotional trauma caused by the defendants' conduct.

## PARTIES

3.  Mizrahi is a single mother with a college-aged child and at the times relevant to this action, Mizrahi lived by herself at 1679 East 3rd Street, Apartment # 302, Brooklyn, New York.

4.  Defendant, the City of New York (the "**City**") is a municipal corporation duly organized and existing under the laws of the State of New York. The City is a "person" for purposes of the enforcement of the rights guaranteed under 42 U.S.C. § 1983.

5.  The City is authorized under the laws of the State of New York to maintain a police force and a separate 911 system, which are both departments, agencies or subdivisions of the City.  The City is the employer of Defendants,

Police Officer Jun Chen and Police Officer Joseph Corrado, who were the uniformed members of the New York City Police Department ("NYPD") who entered Mizrahi's apartment on August 10, 2015.

6.  Defendant, Jun Chen ("**Chen**"), is a NYPD police officer and an employee of the City.

7.  Defendant, Joseph Corrado ("**Corrado**"), is a NYPD police officer and an employee of the City.

8.  Defendant, The New York and Presbyterian Hospital ("**New York-Presbyterian**"), which is also known as and sued as "New York Presbyterian Hospital") is a New York not-for-profit corporation organized and operating in the City of New York.

9.  New York-Presbyterian is the employer of Defendants Novleen Nelson and Satish Abeeluck, the two Emergency Medical Technicians ("EMTs") who responded to Mizrahi's home on August 10, 2015 and, with the assistance of the NYPD, illegally entered her home and unlawfully arrested and imprisoned Mizrahi.

10. Defendant, Novleen Nelson ("**Nelson**") is allegedly a licensed EMT and at all times relevant to this action was an employee of New York-Presbyterian.

11. Defendant, Satish Abeeluck ("**Abeeluck**"), is allegedly a licensed EMT, and at all times relevant to this Complaint was an employee of New York-

Presbyterian.

## JURISDICTION AND VENUE

12.   Federal jurisdiction is based on 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) for the federal claims, and supplemental jurisdiction over the New York common law claims is based on 28 U.S.C. § 1367(a) because those claims arise from a common nucleus of operative facts and are intertwined with the federal claims.

13.   Mizrahi has fully complied with all administrative prerequisites to filing this suit by the filing of a Notice of Claim with the City of New York within the time required by local law.

14. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U. S. C. §§ 1391 (b) & (c).

## STATEMENT OF FACTS

15.   On August 10, 2015, at about 8:42 pm, a former friend of Mizrahi, Asher Adry ("**Adry**"), anonymously called 911 and falsely told the 911 operator that Mizrahi, who he claimed was his friend, was trying to hurt herself.

16.    The circumstances surrounding Adry's call demonstrated that his information was not reliable.  Adry did not provide his name to the 911 operator and did not provide any facts for his claim that Mizrahi was trying to hurt herself. In addition, Adry could not provide the 911 operator with the correct spelling of

Mizrahi's last name, and the only location that he provided to the 911 operator was "the old building" at the intersection of East 2nd Street and Avenue P in Brooklyn, New York.  Finally, Adry told the 911 operator that he "thought" but was not sure that Mizrahi lived in Apartment 3A at that "location."

17.  Based on this information, the 911 operator simultaneously contacted the EMT defendants and the NYPD defendants.   At that time, the EMT defendants, Nelson and Abeeluck, were working in an ambulance owned and operated by New York-Presbyterian, and the NYPD defendants, Chen and Corrado, were working in an NYPD radio patrol car conducting patrol duties in the 66th Precinct.

18.  Acting under the direction and orders of the City's 911 operator's office, which is a City agency or department acting under color of law, all four individual defendants jointly responded to the street location provided to the 911 operator by Adry.

19. Since the information provided to the 911 operator by Adry was inadequate, the individual defendants were not able to locate Mizrahi's home, which was at a different location on a nearby block.

20.  After arriving at the location, Nelson complained to the 911 operator that the information was not adequate and requested that the 911 operator obtain correct and useful information.

21.  When the 911 operator called Adry back to get better information, Adry told the 911 operator that Mizrahi lived in the "old" building at the location in Apartment "302" and that he did not know the building number.

22.  Upon information and belief, the information provided by Adry was passed on by the 911 operator jointly and simultaneously to Defendants Nelson, Abeeluck, Chen and Corrado.

23.  All four individual defendants knew and should have known that the information from the anonymous 911 caller was unreliable.

24.  Ultimately, at about 9:40 pm, which was about one hour after the initial call by Adry, the defendants located Mizrahi's home and rang her buzzer, announcing themselves as "the police."

25.  When Mizrahi opened her door, her dog, a small Beagle, started barking, and Nelson and one of the other defendants immediately ordered Mizrahi to "put the dog away."  While Mizrahi complied with this order, three of the individual defendants, Nelson, Abeeluck and Chen, entered the apartment without asking for or requesting permission while Corrado, upon information and belief, stationed himself outside the apartment.

26.  At the point of their entry into Mizrahi's apartment, none of the individual defendants, collectively or separately, had any reliable information that Mizrahi was a danger to herself or others, and nothing that Mizrahi did at the point

6

that she first encountered them at the threshold of her home (or thereafter) suggested to them or could have reasonably suggested that Mizrahi was or could be considered a possible or potential danger to herself or others.

27.   Upon information and belief, Chen and Corrado were dressed in their blue NYPD patrol uniforms, Nelson was dressed in a blue EMT uniforms, and Abeeluck was dressed in blue pants and a white or a blue shirt.

28.   All four individual defendants willfully and knowingly collaborated and acted in concert as a group, and the group of uniformed individual defendants who appeared at Mizrahi's door and entered her apartment appeared to Mizrahi to be working together.

29.   The individual defendants were in fact working together as a group and jointly participating in, and collaborating with each other, in regard to their joint decision to enter the apartment and to place Mizrahi in custody as an emotionally disturbed person.

30.   Upon entering Mizrahi's apartment, Nelson, who took the lead in addressing Mizrahi, told Mizrahi that an unidentified person had told them that Mizrahi was suicidal.  Although Mizrahi calmly and clearly told them that she was not suicidal, Nelson told Mizrahi that she had to come with them, that they could not leave her home alone, and that she would have to prove that her "friend" was wrong and that she was not a danger to herself.  Nelson's tone and words contained

an implicit threat of escalating trouble for Mizrahi if she continued to resist or refused to comply with their orders.

31.   Upon information and belief, Chen backed up Nelson's orders and directions to Mizrahi by his words, conduct and by his physical presence in Mizrahi's apartment.   Among other things, Chen stated at one point in the apartment that "she's [referring to Nelson] in charge."

32.   At no time did either Chen or Corrado intervene on behalf of Mizrahi, even though it was obvious that there was no basis to enter the apartment or to place Mizrahi in custody.  Rather than conduct his own individual assessment of Mizrahi, Chen acquiesced and ceded all his authority as a police officer to Nelson and by his presence, words and conduct supported, adopted and ratified Nelson's decision to take Mizrahi into custody as emotionally disturbed person.

33.   Based on the emphatic tone and words spoken by Nelson as well as Nelson's menacing conduct while in Mirzahi's apartment and based on the fact that Nelson's orders were being adopted, confirmed and ratified by Abeeluck and Chen, Mizrahi believed that she had no choice about whether to comply with their demands that she come with them.

34.   Mizrahi believed and reasonably believed that she had been placed in their custody against her will, and that any kind of resistance to their demands would only make matters worse for her.

35.  Accordingly, when Nelson ordered Mizrahi to get dressed and to go with them, Mizrahi complied with those orders.

36.  While Mizrahi was getting dressed in her bedroom (with the door left ajar in compliance with the orders of the defendants), Nelson, Abeeluck and Chen searched the rest of the apartment and began talking in a loud, disparaging, and hostile manner about Mizrahi, expressing the belief, among other things, that should was going to kill herself and that she was mentally unstable because she talked to her dog.

37.  While Mizrahi was still in her bedroom, Nelson opened without permission a medicine bottle of Valium (also know as Diazepam), which Mizrahi's doctor had prescribed for her for insomnia, to take as needed for help sleeping. The bottle expressly stated that the medicine was to be taken "as needed."

38.  Based on the fact of the prescription, the date of the prescription and the number of pills left in the bottle, Nelson erroneously, recklessly and negligently concluded that Mizrahi was suicidal, even though Valium is not prescribed for suicidal or dangerous patients and the bottle expressly stated that the Valium was to be taken "as needed."

39.  Nelson and either Chen or Abeeluck also stated loudly that Mizrahi was abusing her prescription medicine, an utterly reckless, careless and baseless conclusion.

40.   One of the male defendants (either Chen or Abeeluck), speaking in a harsh tone, used profanity ("fuck that") while Mizrahi was still in her bedroom.

41.   After overhearing the individual defendants' malicious, disparaging and hostile statements and after becoming aware of their increasingly invasive behavior, Mizrahi became more alarmed and scared for her physical wellbeing. The individual defendants' statements and conduct heightened Mirzahi's belief that she was not in the custody of reliable and trustworthy individuals.  Although Mizrahi's anxiety level and heart rate dramatically rose during this period of time, Mizrahi managed to control her emotions and in a compliant and non-confrontational manner was escorted out of her apartment by the individual defendants.

42.   The individual defendants escorted Mizrahi against her will to the New York-Presbyterian ambulance stationed on the street outside her home, and Nelson and Abeeluck took her to the hospital of her choice, Maimonides Hospital, a nearby hospital in Brooklyn, New York.

43.    Upon arriving at the hospital, Nelson and Abeeluck, intentionally, negligently or with gross and reckless disregard for the truth, provided the Emergency Room personnel (nurses and doctors) with blatantly false and misleading information about Mizrahi.

44.  Among other things, Nelson and Abeeluck reported falsely in their

Prehospital Care Report that they performed an "assessment" of Mizrahi's mental or physical condition, which was improperly labeled as a "psychiatric emergency" for an EDP; that the NYPD was required to "clear the scene" when they first encountered Mizrahi; that Mizrahi was "found walking around [her] apartment;" that Mizrahi "requested" transport to the hospital; and that Mizrahi "request[ed] further evaluation."  None of these statements are true or even partially correct.

45.  Mizrahi was not provided with any opportunity to review the Prehospital Care Report, which was provided to the hospital staff as an important document regularly relied upon by hospital staff when making a determination to hospitalize a person as an emotionally disturbed person.  Instead, Nelson and Abeeluck signed the Prehospital Care Report and falsely stated in the Report that Mizrahi did not sign the Report because she was "unable to sign."

46.  Fortunately, Mizrahi ultimately received competent medical attention from the staff at Maimonides Hospital.  After examining Mizrahi medically and mentally and after contacting her daughter by telephone, the doctors at Maimonides determined that Mizrahi was not emotionally disturbed or a danger to herself.   At about 12:35 am, about three hours after her ordeal began, Mizrahi was released from the hospital and took a cab home in a state of shock.

47.  As a result of the events of August 10, 2015 and the defendants' conduct regarding Mizrahi, Mizrahi was deprived of her liberty and was falsely

imprisoned for about three hours from the time of her initial contact with the individual defendants until her release from the hospital.

48.  As a result of the events of August 10, 2015 and the defendants' conduct regarding Mizrahi, the defendants violated Mizrahi's rights to be secure in her home, by illegally and without a warrant, entering her home without permission or exigent circumstances justifying their warrantless entry.

49.  As a result of the events of August 10, 2015 and the defendants' conduct regarding Mizrahi, Mizrahi has suffered severe emotional trauma; among other things, her therapist has diagnosed her with posttraumatic stress disorder.

50.  As a result of the events of August 10, 2015 and the defendants' conduct regarding Mizrahi, Mizrahi has and continues to suffer anxiety, severe heart palpitations and a rapid heart rate, and her doctor has prescribed beta blockers for her heart conditions.

## FIRST CLAIM FOR RELIEF
### (Fourth Amendment)

51.  Mizrahi repeats all the above allegations as if set forth herein at length.

52. The individual defendants, Nelson, Abeeluck, Chen and Corrado, were acting jointly at all times relevant to this case, and as such Nelson and Abeeluck became state actors together with Chen and Corrado, who were NYPD police officers acting as state actors under color of state law.

53.  The individual defendants, Nelson, Abeeluck, Chen and Corrado, jointly and separately are liable to Mizrahi for their warrantless entry into her home and for false imprisonment of her.

54.  Nelson and Abeeluck were jointly engaged with Chen and Corrado regarding their conduct toward Mizrahi and they willingly participated with, and collaborated with, Chen and Corrado in their joint decisions to enter Mizrahi's apartment and to place her in custody and escort her to the hospital against her will.

55.  The individual defendants, Nelson, Abeeluck, Chen and Corrado, did not have probable cause to believe that Mizrahi was a danger to herself or others and there were no exigent circumstances that justified their warrantless entry into her home.

56.  The individual defendants violated Mizrahi's rights under the Fourth Amendment of the United States Constitution:  (i) by entering her home without a warrant and without exigent circumstances; (ii) by placing her in custody without any basis to believe that she was dangerous to herself or others; and (iii) by falsely arresting, imprisoning and taking Mizrahi to the hospital.

57.  Mizrahi and the individual defendants were all aware of her confinement, Mizrahi did not consent to it, and the defendants lacked any privilege or right to arrest or imprison Mizrahi.

58.  Chen, Abeeluck, and Corrado aided and abetted Nelson's conduct

and are liable for their active assistance and participation in Nelson's violations of Mizrahi's constitutional and civil rights.

59.  Chen and Corrado breached their duty to Mizrahi by failing to intervene on her behalf and stop the violations in their presence of her constitutional and civil rights.

60.  As a result of the individual defendants' joint conduct, each of them are liable to Mizrahi for compensatory and punitive damages in an amount to be established as trial under 42 U. S. C. § 1983.

### SECOND CAUSE OF ACTION
### (False Imprisonment)

61.    Mizrahi repeats all the above allegations as if set forth herein at length.

62.   All the defendants, the City, New York-Presbyterian, and the four individual defendants, Nelson, Abeeluck, Chen and Corrado, jointly and separately, are liable to Mizrahi for false imprisonment and false arrest of Mizrahi in violation of the common law of the State of New York.

63.  The City is liable to Mizrahi for the conduct of its two employees, Chen and Corrado, because Chen and Corrado were acting within the scope of their employment in connection with their conduct toward Mizrahi on August 10, 2015.

64.  New York-Presbyterian is liable to Mizrahi for the conduct of its two employees, Nelson and Abeeluck, because Nelson and Abeeluck were acting

within the scope of their employment in connection with their conduct toward

Mizrahi on August 10, 2015.

65. As a result of the defendants' conduct, each of them is jointly and

severally liable to Mizrahi for compensatory and punitive damages caused by their

unlawful conduct.

### THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

66.    Mizrahi repeats all the above allegations as if set forth herein at

length.

67.    All the defendants, the City, New York-Presbyterian, and the four

individual defendants, Nelson, Abeeluck, Chen and Corrado, jointly and separately,

are liable to Mizrahi for intentional infliction of emotion distress.

68.  The defendants' intentional and reckless conduct (entering Mizrahi's

apartment without cause; searching her apartment; making disparaging and hostile

comments about and to Mizrahi; falsely imprisoning her; and providing false,

inflammatory and misleading statements to the hospital staff) is extreme and

outrageous conduct that was intended to cause Mizrahi severe emotional distress

and did cause her severe emotional distress.

69.  The defendants committed the acts alleged herein maliciously,

fraudulently and oppressively with the wrongful intention of injuring Mizrahi, from

an improper motive amounting to malice and in conscious disregard of Mizrahi's

rights, entitling her to recover punitive damages in amounts to be proven at trial.

70.  As a proximate result of the defendants' conduct, Mizrahi has suffered and continues to suffer extreme emotional distress.

71.  As a result of the defendants' conduct, each of them is jointly and severally liable to Mizrahi for compensatory and punitive damages caused by their unlawful conduct.

## FOURTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

72.   Mizrahi repeats all the above allegations as if set forth herein at length.

73.   All the defendants, the City, New York-Presbyterian, and the four individual defendants, Nelson, Abeeluck, Chen and Corrado, jointly and separately are liable to Mizrahi for negligent infliction of emotional distress.

74.  The individual defendants each owed Mizrahi a duty of care to act with reasonable care and the damages and suffering caused to Mizrahi by the defendants was reasonably foreseeable.

75.  At all relevant times, Defendants City, Chen and Corrado had the power, ability, authority and duty to stop the conduct described herein and to intervene to prevent or prohibit such conduct.  Rather than exercise that power, Chen and Corrado acquiesced to Nelson and Abeeluck.

76. At all relevant times, all the defendants knew, or reasonably should

have known, that the conduct described herein would and did proximately result in

Mizrahi's emotional distress.

77.  Despite said knowledge, power, and duty, defendants Nelson,

Abeeluck, Chen and Corrado negligently failed to stop engaging in the conduct

described herein and negligently failed to prevent or to prohibit such conduct or

otherwise to protect Mizrahi, thereby breaching their duty to her.

78. The individual defendants unreasonably endangered Mizrahi's

physical safety and caused Mizrahi to fear for her own safety.

79.  As a result of the defendants' conduct, all of them are jointly and

severally liable to Mizrahi for damages caused by their unlawful conduct.

## FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentations)

80.   Mizrahi repeats all the above allegations as if set forth herein at

length.

81.  New York-Presbyterian, Nelson, and Abeeluck, jointly and

separately, are liable to Mizrahi for the negligent misrepresentations that Nelson

and Abeeluck made to the staff at the hospital.

82.  Nelson and Abeeluck were aware that the information they provided

to the hospital staff in the Prehospital Care Report and orally in the Emergency

Room was to be used by the hospital staff for the particular purpose of determining

whether to release Mizrahi or to continue to confine her as an emotionally

disturbed person.

83. The relationship between New York-Presbyterian, Nelson, and Abeeluck and the hospital staff at Maimonides Hospital is contractual and so close a relationship that it approaches a relationship of privity of contract.

84. The hospital staff relied on the statements made by Nelson and Abeeluck in furtherance of their purpose in regard to Mizrahi, and as a result of those statements Mizrahi was detained against her will longer than she would have been had those statements not been made.

85. As a result of the defendants' conduct, New York-Presbyterian, Nelson and Abeeluck, are jointly and severally liable to Mizrahi for compensatory and punitive damages caused by their unlawful conduct.

## SIXTH CLAIM FOR RELIEF
### (Negligent Care and Treatment)

86. Mizrahi repeats all the above allegations as if set forth herein at length.

87. New York-Presbyterian, Nelson, and Abeeluck, jointly and separately, are liable to Mizrahi for negligence in the careless, reckless and improper way that they evaluated and treated Mizrahi.

88. New York-Presbyterian, Nelson, and Abeeluck owed Mizrahi a duty of care and they breached that duty, causing Mizrahi damages.

89. As a result of the defendants' conduct, each of them is jointly and

severally liable to Mizrahi for damages caused by their unlawful conduct.

## SEVENTH CLAIM FOR RELIEF
### (Negligent Hiring, Training and Supervision)

90.    Mizrahi repeats all the above allegations as if set forth herein at length.

91.  Defendant New York-Presbyterian selected, hired, trained, retained, assigned and supervised the individual defendants, Nelson and Abeeluck.

92.   New York-Presbyterian was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of its staff, including Nelson and Abeeluck.

93.  All the individual defendants in this action were acting as agents of each other. Each defendant knew or reasonably should have known that the other individual defendants were engaging in the wrongful conduct alleged herein, and that this conduct would directly and proximately result in injury to Mizrahi.

94.   New York-Presbyterian had the authority to supervise, prohibit, control, and regulate Nelson and Abeeluck so as to prevent these acts and omissions from occurring.

95.   New York-Presbyterian knew or reasonably should have known that unless they intervened to protect Mizrahi and properly supervise, prohibit, control, and/or regulate the conduct of Nelson and Abeeluck, those individual defendants would perceive their acts and omissions as being ratified and condoned.

96.   New York-Presbyterian failed to exercise due care by failing to supervise, prohibit, control, or regulate Nelson and Abeeluck and/or by failing to protect Mizrahi. As a direct and proximate result of Nelson's and Abeeluck's acts and omissions, Mizrahi has suffered and continued to suffer injuries entitling her to damages in an amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
### (Negligence – All Defendants)

97.   Mizrahi repeats all the above allegations as if set forth herein at length.

98.   All the defendants owed Mizrahi a duty of care and breached that duty by their negligent conduct, which caused Mizrahi damages in an amount to be established at trial.

WHEREFORE, Plaintiff demands that judgment be entered against each of the Defendants, jointly and severally, for compensatory damages, for punitive damages, for reasonable attorneys' fees, costs and expenses of this action pursuant to 42 U. S. C. § 1988, together with interest thereon as provided by law and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated:  November 4, 2016

*s/NBS*

_____
Nathaniel B. Smith
100 Wall St. – 23rd Flr
New York, NY 10005
212-227-7062
natbsmith@gmail.com
Attorney for Plaintiff
