UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X      15-CV-6084 (ARR)(LB)

SHULAMIT MIZRAHI,

                Plaintiff,

                v.

THE CITY OF NEW YORK, POLICE
OFFICER JUN CHEN, POLICE OFFICER
JOSEPH CORRADO, THE NEW YORK AND
PRESBYTERIAN HOSPITAL (a/k/a NEW
YORK PRESBYTERIAN HOSPITAL),
NOVELEEN NELSON, and SATISH
ABEELUCK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

*PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER PARTIAL MOTION
FOR SUMMARY JUDGMENT*

                                                      Law Office of
                                                          Nathaniel B. Smith
                                                          80 Broad Street – Suite 1900
                                                          New York, NY 10004
                                                          212-227-7062
                                                          natbsmith@gmail.com
                                                          Attorney for Plaintiff

Dated: November 13, 2017

TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

Factual Background ................................................................................................... 2

Argument ................................................................................................................... 5

Summary Judgment on the Affirmative Defense of Probable Cause
Should be Granted Because There is No Evidence of Dangerousness ........................ 5

    1. The Summary Judgment Standard ................................................................. 5

    2. The Elements of a Section 1983 False Imprisonment Claim .......................... 6

    3. The NYPD Defendants Cannot Raise a Question of Fact as to
    Whether There Was Probable Cause to Believe that Mizrahi Was
    Dangerous ......................................................................................................... 7

Conclusion ................................................................................................................. 10

## TABLE OF AUTHORITIES

*Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) .................................................................. 6

*Allison v. New York*, 2011 U.S. Dist. LEXIS 109683 at *7 (W.D.N.Y. Sep. 25, 2011) ................. 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) ....................................................... 5

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) .................................................... 6

*Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ..................... 5

*Kerman v. City of New York*, 261 F. 3d 229 (2d Cir. 2001) ........................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .............................. 6

*Monroe v. County of Orange,* 2016 U. S. Dist. Lexis 132408 at * 37

    (S.D.N.Y. Sept. 27, 2016) ................................................................................................... 10

*Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995) .......................................... 5

*Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 456 (S.D.N.Y. 2012) ............................... 8

*Willey v. Kirkpatrick*, 801 F.3d 51, 70-71 (2d Cir. 2015) ............................................................... 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X    15-CV-6084 (ARR)(LB)

SHULAMIT MIZRAHI,

           Plaintiff,

      v.

THE CITY OF NEW YORK, POLICE
OFFICER JUN CHEN, POLICE OFFICER
JOSEPH CORRADO, THE NEW YORK AND
PRESBYTERIAN HOSPITAL (a/k/a NEW
YORK PRESBYTERIAN HOSPITAL),
NOVELEEN NELSON, and SATISH
ABEELUCK,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER PARTIAL MOTION FOR SUMMARY JUDGMENT**

*Preliminary Statement*

Plaintiff, Shulamit Mizrahi ("Mizrahi"), submits this memorandum of law in support of her partial motion for summary judgment. This motion is directed to one of the affirmative defense of probable cause raised by the NYPD Defendants, the City of New York and Police Officers Chen and Corrado. The EMT Defendants have already disavowed any claim or defense that Mizrahi was, or appeared to be, dangerous.[1]

In their Amended Answer to the Amended Complaint, the NYPD Defendants alleged that their conduct in entering Mizrahi's home and seizing her was justified by probable cause. (Amended Answer ¶ 108; Plaintiff's Motion Exhibit ("PMX") 3.) In subsequent submissions to the Court, the NYPD Defendant have more explicitly explained this affirmative defense by

---

[1] See Plaintiff's Rule 56.1 Statement of Undisputed Facts in Support of Summary Judgment Motion (" Statement of Facts") at ¶ 6.
[2] Plaintiff's Rule 56.1 Statement at ¶ 9 (citing Plaintiff's Motion Exhibit ("PMX") 6, which is the NYC Sprint Report for the 911 call).

contending that "a showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior, not an actual showing of such behavior." (Brown Letter to Judge Ross, dated August 24, 2017, at p. 3; PMX # 5.)  Hence, the NYPD Defendants will apparently be seeking to prove at trial that either Mizrahi was acting dangerous on the night in question or that a reasonable person would have concluded that there was a substantial chance or probability that she was dangerous or suicidal.

For the reasons set forth more fully below, summary judgment dismissing this affirmative defense should be granted because there is no evidence that would rationally suggest that Mizrahi was likely to be dangerous to herself or others.  First, the undisputed facts, as reflected by the audio recording of the event, belie the suggestion by defense counsel that Mizrahi was acting dangerously.  Second, the individual NYPD and EMT Defendants who entered Mizrahi's apartment admitted in their depositions that Mizrahi was not acting dangerous.  (*See* Plaintiff's Motion Exhibits (PMX") Nos. 11 – 14 (excerpts of the depositions of individual defendants Nelson, Abeeluck, Chen, and Corrado.)  Accordingly, partial summary judgment should be granted because there is no evidence from which a rational jury could find that Mizrahi was, or reasonably appeared to be, dangerous and the defendants have admitted that she was not dangerous.

*Factual Background*

The material and undisputed facts are set forth in Mizrahi's accompanying Rule 56.1 Statement.  Briefly, the facts relevant to this motion are summarized below.

At about 8:42 PM on August 10, 2015, an unidentified male called the New York City

911 operator, stating that a "friend [was] trying to hurt herself."[2] The male caller told the 911 operator to respond to East 2nd Street and Avenue P, an intersection in Midwood, Brooklyn.[3] The male caller also told the operator to look for apartment number "3A" in the "old building" at that location with the name "MIZRCHI" on the bell.[4]

The 911 operator classified the call as an "EDP" call (which refers to an "emotionally disturbed person") and assigned the call to two Emergency Medical Technicians, Defendants Noveeen Nelson and Satish Abeeluck, who worked for Defendant New York-Presbyterian.[5] Simultaneously, the 911 operator assigned the call to Defendant Police Officers Jun Chen and Joseph Corrado, who were working patrol that night in the 66th Precinct.[6]

The two EMT Defendants and the two NYPD Defendants responded to East 2nd Street and Avenue P,[7] but did not find anyone at that location in need of assistance.[8] Chen marked the call as unfounded, and both Chen and his partner left the scene.[9] Nelson, on the other hand, requested that the 911 operator obtain additional information from the unidentified male caller.[10] Although the caller could only tell them that Mizrahi (which he incorrectly spelled "MIZRCHI") was at the "old building" on that intersection, Nelson eventually determined that Mizrahi lived a

---

[2] Plaintiff's Rule 56.1 Statement at ¶ 9 (citing Plaintiff's Motion Exhibit ("PMX") 6, which is the NYC Sprint Report for the 911 call).
[3] PMX 6 (Sprint Report time entry for 20:42:16). The reference to a specific time entry in the Sprint Report refers to the time entries in the left-hand column of the Sprint Report, which time-stamps events by hour, minute and second. Thus, "20:42:16" means 16 seconds after 8:42 PM.
[4] PMX 6 (time entries for 20:44:49 & 20:45:59).
[5] *Id.* (time entry for 20:43:21).
[6] *Id.* (time entry for 20:45:19); *see also* PO Chen Memo Book, PMX 15 at DEF 103 (entry for 20:45 stating: "10-54 EDP East 2nd and Ave P"); Chen Deposition Transcript at page 40, lines 9-11 (cited as "Tr. 40:9-11" and attached as PMX 13).
[7] Chen Tr. 43:9-23 (PMX 13); Nelson Tr. 55:17-57:14 (PMX 11).
[8] Chen Tr. 43:9-44:18; PMX 3; Nelson Tr. 56:25-57:18 (PMX 11).
[9] Chen Tr. 43:20-24 & 47:4-48:12 (PMX 13).
[10] Nelson Tr. 58:7-61:9 (PMX 11).

block away at 1679 East 3rd Street.[11]

After the 911 operator told Chen and Corrado to return to the correct address, the four individual defendants entered Mizrahi's apartment building at about 9:40 PM that evening, knocked on her apartment door, and announced that they were the police.[12] Once Mizrahi unlocked the door, they pushed their way into her apartment,[13] making their first contact with Mizrahi about an hour after the 911 call.[14]

Nelson entered first and immediately started yelling orders at Mizrahi to put away her small beagle, who was barking at the intruders.[15] After Mizrahi complied, Nelson told Mizrahi that a "friend" called 911, saying that Mizrahi wanted to hurt herself.[16] Mizrahi told Nelson that this "friend" was lying.[17] Nevertheless, Nelson told Mizrahi that "this is serious" and that "we can't leave you here."[18] Nelson specifically asked Mizrahi if she needed to talk to someone, and Mizrahi told her no and that she was fine.[19] Despite telling them that she was fine,[20] Nelson directed Mizrahi to get dressed, explaining that they "can't leave you – especially by yourself."[21] Nelson also told Mizrahi that Mizrahi had to go to the hospital because she "can't prove us wrong, prove him [the male 911 caller] wrong."[22]

---

[11] *Id.*
[12] Chen Tr. 63:6-17 (PMX 13).
[13] Mizrahi Tr. 193:25-194:13 & 293:16-295:10 (PMX 9).
[14] Prehospital Care Report at p. 1 ("Patient Contact: 21:40") (PMX 7).
[15] Mizrahi Tr. 293:16-294:4 (PMX 9). Just before the defendants entered the apartment, Mizrahi turned on the record button on her telephone. A copy of the recording is being provided to the Court as PMX 8.
[16] PMX 8; Audio Recording at 1:34 & 1:45.
[17] *Id.* at 1:46, 4:16 & 4:46.
[18] *Id.* at 1:40.
[19] *Id.* at 2:10.
[20] Abeeluck Tr. 106:6-13 (PMX 12).
[21] PMX 8; Audio Recording at 4:07.
[22] *Id.* at 4:20.

Humiliated and in a state of utter shock,[23] the NYPD and EMT Defendants escorted Mizrahi out of her building in the presence of her neighbors[24] and the EMT Defendants took her to Maimonides Hospital against her will.

*Argument*

*Summary Judgment on the Affirmative Defense of Probable Cause Should be Granted Because There is No Evidence of Dangerousness*

*1. The Summary Judgment Standard.*

Summary judgment should be granted if the pleadings, the discovery record, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts do not try issues of fact on a motion for summary judgment, but, rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law."[25]

The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish the moving party's right to judgment as a matter of law.[26] Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."[27] Rule 56(a) specifically authorizes a partial motion for summary judgment on any

---

[23] Mizrahi Tr. 284:8 (PMX 9).
[24] Mizrahi Tr. 284:9-21 (PMX 9).
[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).
[26] *Rodriguez v. City of New York.*, 72 F.3d 1051, 1060-61 (2d Cir. 1995).
[27] *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994)(citations omitted).

claim, defense, or part thereof. Fed. R. Civ. P. 56(a).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."[28] However, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."[29]

*2. The Elements of a Section 1983 False Imprisonment Claim.*

Mizrahi's first claim for relief asserts that the NYPD Defendants and the EMT Defendants violated Mizrahi's Fourth Amendment rights by falsely imprisoning her and by taking her to the hospital against her will to be psychiatrically evaluated.[30] The second claim for relief asserts a related common law claim for false arrest.[31]

The elements of a false imprisonment claim under the Fourth Amendment and under the common law of New York are similar. Both require proof of the following elements: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.[32]

---

[28] *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[29] *D'Amico v. City of New York.*, 132 F.3d 145, 149 (2d Cir. 1998).
[30] Amended Complaint ¶ 56 (PMX 1).
[31] *Id*. at ¶ 62.
[32] *Willey v. Kirkpatrick*, 801 F.3d 51, 70-71 (2d Cir. 2015) (New York common law); *Singer v. Fulton*, 63 F. 3d 110, 118 (2d Cir. 1995) (Section 1983 claims are substantially similar to the related common law claims of false arrest and false imprisonment).

*3. The NYPD Defendants Cannot Raise a Question of Fact as to Whether There Was Probable Cause to Believe that Mizrahi Was Dangerous.*

This motion for summary judgment is directed to the fourth element, *i.e.,* whether Mizrahi's confinement was privileged, which is an affirmative defense.[33] In the mental health seizure context, courts analyzing the privilege question first look to Section 9.41 of the Mental Hygiene Law, which gives police the authority to take a person to custody. The statute provides in relevant part that:

> Any peace officer . . . may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others.

Mental Hygiene Law § 9.41.

The Mental Hygiene Law also specifically defines the kind of conduct that can justify the use of this police power. The term "likely to result in serious harm" is expressly defined by the statute to mean:

> (a) a *substantial risk* of physical harm to the person as *manifested by threats* of or *attempts* at suicide or serious bodily harm or *other conduct* demonstrating that the person is dangerous to himself or herself, or
>
> (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

Mental Hygiene Law § 9.01 (emphasis added).

Generally, a police officer's conduct is privileged under the Mental Hygiene Law where it is objectively reasonable to conclude that there was probable cause to believe that the

---

[33] *See Allison v. New York*, 2011 U.S. Dist. LEXIS 109683, at *7 (W.D.N.Y. Sep. 25, 2011) ("Probable cause is an affirmative defense to a false arrest claim.")

individual was a danger to herself or others.[34]  The leading case in this Circuit on mental health seizures is *Kerman v. City of New York*, 261 F. 3d 229 (2d Cir. 2001), where the Second Circuit held that an anonymous tip was insufficient as a matter of law to establish probable cause to enter a person's home.

In *Kerman* the NYPD received an anonymous 911 tip that a mentally ill man was off his medication, acting crazy, and possibly had a gun.[35]  The 911 caller also provided the police with the man's location and his telephone number.[36]  The *Kerman* court held that the 911 call was not itself sufficient as a matter of law to establish probable cause because there was no indication that the caller was reliable and the police had no corroborating evidence of the alleged danger to establish reliability.[37]  That holding applies here with even greater force.

The information that the NYPD Defendants had about Mizrahi at the time of their forced entry into her home was far less alarming because there was no reference by the caller to a weapon or to medication.  In addition, the particular circumstances of this case demonstrate that the 911 caller was in fact unreliable.  The 911 caller provided wrong information about the location of Mizrahi's building, the wrong apartment number, and the wrong spelling of her last name.  Indeed, as a result of that wrong information, the NYPD Defendants initially marked the call unfounded, and it took the EMT Defendants and the NYPD Defendants nearly an hour to locate Mizrahi.

Thus, the basis for probable cause to justify the entry in this case is even less compelling

---

[34] *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 456 (S.D.N.Y. 2012) ("Defendant' conduct is privileged where there was probable cause to believe that the individual was a danger to herself or others") (citing *Kerman v. City of New York*, 261 F. 3d 229, 240 n. 8 (2d Cir. 2001)).
[35] 261 F. 3d at 232.
[36] *Id.*
[37] *Id.* at 236.

than the basis for probable cause urged (and rejected) in *Kerman*. Accordingly, the NYPD cannot as a matter of law claim that they had probable cause to enter Mizrahi's home because of any concern about Mizrahi being a danger to herself or at risk of suicide.

Nor can the NYPD Defendants establish a genuine issue of material fact on whether they had probable cause to seize Mizrahi as mentally ill and force her to go to the hospital. As demonstrated above, the information that the NYPD Defendants had at the time of the entry did not establish an objectively reasonable basis to believe that Mizrahi was in danger, and the information that the NYPD Defendants obtained after the entry provides no ground for a reasonable belief that Mizrahi was suicidal.

First, the audio recording shows the Mizrahi -- in a calm and coherent manner[38] -- told the NYPD and EMT Defendants that she was fine, that she had no medical history, that she did not need to see a doctor, and had no intention of hurting herself.[39] The recording also shows that the defendants simply did not have any regard for the facts and told Mizrahi "we can't leave you here." [40]

Second, the defendants' deposition testimony *requires* summary judgment on the issue: Officer Chen testified at his deposition:

> "Upon arrival, I determined that she was not a danger to herself or to us at that time, and yes."[41]

Similarly, EMT Defendant Nelson testified:

Q. Did she do anything to suggest in your presence that she was suicidal?

---

[38] Defendant Abeeluck admitted that Mizrahi was coherent and had decisional capacity. PMX 12 (Abeeluck Tr. 114:22-115:25).
[39] PMX 8 at 0:11-4:46.
[40] PMX 8 at 1:39-1:41.
[41] PMX 13(Chen Tr. 79:11-12).

A. No, sir.[42]

Simply put, there is no evidence in the record from which a reasonable jury could find that on August 10, 2015 Mizrahi was dangerous to herself. Accordingly, the suggestion by counsel for the NYPD Defendants in their pre-motion letter that Mizrahi might have appeared dangerous must be rejected as a matter of law because that position is directly inconsistent with the admissions made by the NYPD Defendants in their depositions and is unsupported by any legally sufficient evidence in the record.

*Conclusion*

One of the purposes of a summary judgment motion is to narrow the genuine issues of material fact that need to be determined at trial.[43] Since there is no basis for suggesting that Mizrahi was at any time dangerous or acted in a way that made it reasonably appear that she was dangerous, the issue should be removed from the jury's consideration and the NYPD Defendant's affirmative defense of probable cause should be dismissed as a matter of law.

Dated: November 13, 2017

*s/NBS*

_____
Nathaniel B. Smith
80 Broad Street – Suite 1900
New York, NY 10004
212-227-7062
natbsmith@gmail.com
Attorney for Plaintiff

---

[42] PMX 11 (Nelson Tr. 71:22-24).
[43] *Monroe v County of Orange,* 2016 U. S. Dist. Lexis 132408 at * 37 (S.D.N.Y. Sept. 27, 2016); FRCP 56(a) ("A party may move for summary judgment, identifying each claim or defense – or part of each claim or defense – on which summary judgment is sought.")